UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

TIMOTHY FISHER,                          )
                                         )
                    Plaintiff,           )        Case No. 1:09-cv-1096
                                         )
v.                                       )        Honorable Paul L. Maloney
                                         )
COMMISSIONER OF                          )
SOCIAL SECURITY,                         )
                                         )        **REPORT AND RECOMMENDATION**
                    Defendant.           )
_____  )


      This is a social security action brought under 42 U.S.C. § 1383(c)(3) seeking review

of a final decision of the Commissioner of Social Security denying plaintiff's claim for supplemental

security income (SSI) benefits.  On December 12, 2006, plaintiff filed his application for benefits

alleging a December 10, 2002 onset of disability.  He later amended his claim to allege a December

13, 2006 onset of disability[1]  (A.R. 110-12, 130).  Plaintiff's claim for SSI benefits was denied on

initial review.  (A.R. 77-80).  On February 10, 2009, he received a hearing before an administrative

law judge (ALJ), at which he was represented by counsel.  (A.R. 25-65).  On April 3, 2009, the ALJ

issued a decision finding that plaintiff was not disabled.  (A.R. 10-20).  On October 7, 2009, the

Appeals Council denied review (A.R. 1-3), and the ALJ's decision became the Commissioner's final

decision.

_____

[1]SSI benefits are not awarded retroactively for months prior to the application for benefits.
20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also
Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004).  The earliest month in
which SSI benefits are payable is the month after the application for SSI benefits is filed.  Thus,
January 2007 is plaintiff's earliest possible entitlement to SSI benefits.

On December 4, 2009, plaintiff filed his complaint seeking judicial review of the Commissioner's decision denying his claim for SSI benefits. Plaintiff raises the following issues:

I.      Whether the Commissioner erred as a matter of law in evaluating whether Mr. Fisher met the requirements of [listing] 12.05([C]) by not determining his mental retardation began prior to age 22 given the significant evidence to the contrary[; and]

II.     Whether the Commissioner erred as a matter of law in failing to properly evaluate the evidence in determining the claimant's mental retardation was [not] medically equivalent to the listing of 12.05 given a valid IQ score of 58, and significant evidence of other serious impairments.

(Plf. Brief at 1-2, Statement of Issues, docket # 9). Upon review, I find that the issues raised by plaintiff do not provide a basis for disturbing the Commissioner's decision. I recommend that the Commissioner's decision be affirmed.

### Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see*

*McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

### Discussion

The ALJ found that plaintiff had not engaged in substantial gainful activity on or after December 12, 2006. (A.R. 12). Plaintiff had the following severe impairments: "diabetes mellitus, residuals of a healed fracture of the right hand, depression, and post-traumatic stress disorder (PTSD)." (A.R. 12). The ALJ found that plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments:

> In accordance with Social Security Ruling 96-6p, I have adopted the finding of the DDS medical consultant who found that the severity of the claimants impairment(s) does not equal

the severity requirements of any listed impairment. There is no medical evidence to establish that the claimant's diabetes mellitus is attended by medical findings required by Listing 9.08, nor is there evidence to establish that the claimant's right hand impairment is attended by the medical findings required by Listings 1.02B or 14.09.

In addition, the severity of the claimant's mental impairments does not meet or medically equal the severity criteria of Listings 12.04 or 12.06 as there is no evidence to establish that his depressive and anxiety disorders result in marked limitation of functioning to the degree required by the Part B criteria of these listings, nor are there limitations as described in the Part C criteria of these listings. Furthermore, I have considered the argument of the claimant's attorney in his pre-hearing brief that the severity of the claimant's cognitive disorder meets the severity requirements of Listing 12.05B, or in the alternative, Listing 12.05D (Exhibit 12e)[A.R. 214-16], and find such to be without merit since there is no evidence to indicate that the claimant experienced deficits of adaptive functioning consistent with mental retardation before age 22 years. I also note that while the cognitive testing of the claimant in February 2009 yielded a full scale IQ score of 58, which was referenced by the claimant's attorney, there is no mention of cognitive deficits by any other examiner of record prior to this evaluation, conducted only one week before the claimant's administrative hearing.

(A.R. 13-14). The ALJ found that plaintiff had a mild restriction in activities of daily living, moderate difficulty in maintaining social functioning, moderate difficulty in maintaining concentration, persistence or pace, and no episodes of decompensation. (A.R. 14-15).

Plaintiff retained the residual functional capacity (RFC) for a limited range of work at the medium exertional level:

The claimant has the residual functional capacity to perform a limited range of medium work as defined in 20 CFR 416.967(c): he can lift and/or carry up to 50 pounds occasionally and 25 pounds frequently; stand and/or walk for a total of six hours in an eight hour workday; occasionally balance and climb ladders, ropes, or scaffolds; and frequently stoop, kneel, crouch, crawl, and climb ramps or stairs. In addition, he must avoid concentrated exposure to unprotected heights and moving machinery; is limited to simple (one or two step) job tasks which involve no more than occasional decision-making, judgment, or changes in the workplace; and cannot maintain more than occasional interaction with co-workers or supervisors.

(A.R. 15). The ALJ found that plaintiff's testimony regarding his subjective limitations was not fully credible. (A.R. 15-18). Plaintiff's credibility was undermined by his extensive daily activities and his extreme reluctance to admit his history of substance abuse:

> The claimant maintains an independent residence[. He] lives in a house with his girlfriend Sue and their two children, ages 15 and 12 years. He reported his daily activities to consist of eating meals, watching television, helping with light household chores, and tending to the needs of a dog. He stated that he does not drive because he never obtained a license but reported that he remains able to prepare simple meals, shop for groceries and needed items two to three times per month, perform yard work, and attend to his personal needs without assistance.

> * * *

> While the evidence of record also indicates that the claimant has been assessed to have depression and post-traumatic stress disorder, the overall record is not reflective of symptoms of a debilitating degree, as would be suggested by a need for repeated hospitalizations for mental health treatment. In fact I note that no treating medical service provider has assessed the severity of the claimant's reported emotional symptoms, including hallucinations, to warrant a referral for inpatient treatment. As previously noted, no significant deficits of memory or concentration are documented, and per his own admissions, the claimant has clearly maintained a significant amount of daily activities since September 12, 2006.

> I further note, most interestingly, that while the claimant denied having a history of substance abuse when he presented for his hearing before me in February 2009 [A.R. 50-56], such usage was fully acknowledged by the claimant in numerous medical records considered in adjudicating his prior applications, as reflected in the hearing decision issued by Judge Asbille in March 2004 (See Exhibit 1a)[A.R. 67-74]. He also fully acknowledged a history of substance abuse to D. Mulder, Ed.D., the psychologist who evaluated him at his attorney's request only one week prior to his administrative hearing (Exhibit 15f/p.2)[A.R. 336]. While the record is not indicative of current substance abuse, or that such has been an issue since September 12, 2006, his reluctance to admit his former substance abuse at his administrative hearing impugns his credibility.

(A.R. 16-18). Plaintiff does not have past relevant work experience. (A.R. 18). He was 35 years old on the date he filed this application for SSI benefits and 38 years old on the date of the ALJ's decision. Thus, at all times relevant to his claim for SSI benefits plaintiff was classified as a younger individual. (A.R. 19). Plaintiff has a high school equivalent education and is able to communicate

in English. (A.R. 19). Plaintiff lacks transferable work skills because he has no past relevant work. (A.R. 19). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with his RFC, education, and work experience, the VE testified that there were approximately 24,800 jobs in the State of Michigan that the hypothetical person would be capable of performing. (A.R. 59-60). The ALJ found that this constituted a significant number of jobs. Using Rule 203.28 of the Medical-Vocational Guidelines as a framework, the ALJ held that plaintiff was not disabled.[2] (A.R. 15-26).

## I.

Plaintiff argues that the Commissioner erred as a matter of law in finding that he did not meet the requirements of listing 12.05(C):

> T[]he Commissioner erred as a matter of law in evaluating whether Mr. Fisher met the requirements of [listing] 12.05([C]) by not determining his mental retardation began prior to age 22 given the significant evidence to the contrary.

(Plf. Brief at 4). "Significant evidence to the contrary" is not the standard of review. Judicial review is limited to determining whether the ALJ correctly applied the law and whether his administrative findings are supported by substantial evidence. *See Elam*, 348 F.3d at 125. The ALJ's decision easily passes muster under the applicable standard.

---

[2]Since 1996, the Social Security Act, as amended, has precluded awards of SSI and DIB benefits based upon alcoholism and drug addiction. *See* 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); 20 C.F.R. §§ 404.1535, 416.935; *see also Bartley v. Barnhart*, 117 F. App'x 993, 998 (6th Cir. 2004); *Hopkins v. Commissioner*, 96 F. App'x 393, 395 (6th Cir. 2004). The claimant bears the burden of demonstrating that drug and alcohol addiction is not a contributing factor to his disability. *See Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007); *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999); *see also Zarlengo v. Barnhart*, 96 F. App'x 987, 989-90 (6th Cir. 2004). Because plaintiff was found not to be disabled, the ALJ was not required to decide the issue of whether alcohol and drug abuse were material to a finding of disability.

A.      Listing 12.05

It is well established that a claimant must show that he satisfies all the individual requirements of a listing.  *See Elam*, 348 F.3d at 125; *see also Perschka v. Commissioner*, No. 09-6328, 2010 WL 5439794, at * 4 (6th Cir. Dec. 30, 2010).  The listing must be read as a whole, and plaintiff has the burden of demonstrating that he meets all parts of the listing.  "If all the requirements of the listing are not present, the claimant does not satisfy that listing."  *Berry v. Commissioner*, 34 F. App'x 202, 203 (6th Cir. 2002).  "It is insufficient that a claimant comes close to satisfying the requirements of a listed impairment."  *Elam*, 348 F.3d at 125.

"The structure of listing for mental retardation (12.05) is different from that of the other mental disorders listings.  Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation.  It also contains four sets of criteria (paragraphs A through D)."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A).  A claimant will not be found disabled under the listing for mental retardation unless he satisfies the diagnostic description in the introductory paragraph *and* one of the additional sets of criteria found in paragraphs A through D.  *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

The diagnostic description contains the following requirements:

12.05  Mental Retardation: Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05.  The ALJ found "no evidence that plaintiff experienced deficits in adaptive functioning[3] consistent with mental retardation before age 22 years." (A.R. 14).  The ALJ's finding is supported by more than substantial evidence.

Plaintiff filed remarkably little evidence in support of his claim for SSI benefits.  The record is devoid of evidence establishing that plaintiff experienced deficits of adaptive functioning consistent with metal retardation before age twenty-two.  Plaintiff reached age twenty-two on March 2, 1993.  Plaintiff did not submit medical records, or any other type of record, generated on or before March 2, 1993.  The earliest medical records plaintiff filed in support of this claim for SSI benefits are dated more than a dozen years after plaintiff reached age twenty-two.  (A.R. 221-27).  It was plaintiff's burden to submit medical evidence establishing his disability.  *See Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).  Further, it was his burden at step 3 of the sequential analysis[4] to demonstrate that his impairment met or equaled the requirements of

---

[3]"Listing 12.05 does not define the term 'deficits in adaptive functioning.'" *Sherrod v. Astrue*, No. 10-C-451, 2011 WL 284349, at * 9 (E.D. Wisc. Jan. 25, 2011).  "Adaptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills." *West v. Commissioner*, 240 F. App'x 692, 698 (6th Cir. 2007).

[4]"Administrative law judges employ a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Social Security Act." *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).  Under the sequential analysis, "The claimant must first show that []he is not engaged in substantial gainful activity.  Next, the claimant must demonstrate that []he has a 'severe impairment.'  A finding of 'disabled' will be made at the third step if the claimant can then demonstrate that h[is] impairment meets the durational requirement and 'meets or equals a listed impairment.'  If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that []he is incapable of performing work that []he has done in the past.  Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed.  The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work." *White v. Commissioner*, 572 F.3d 272, 282 (6th Cir. 2009).

listing 12.05. *See Kyle v. Commissioner*, 609 F.3d 847, 855 (6th Cir. 2010); *White v. Commissioner*, 572 F.3d 272, 282 (6th Cir. 2009). Plaintiff's failure to submit evidence generated on or before March 2, 1993, undermines his argument that the ALJ committed error when he found that plaintiff did not meet or equal the requirements of listing 12.05. The absence of a diagnosis of mental retardation by any treating or examining psychiatrist, psychologist, or physician during plaintiff's developmental period before age twenty-two is substantial evidence supporting the ALJ's finding that plaintiff did not meet or equal the requirements of 12.05. *See Hayes v. Commissioner*, 357 F. App'x 672, 676 (6th Cir. 2009) (if the claimant cannot establish onset before age 22, he "cannot equal Listing 12.05"); *see also Sanders v. Astrue*, 3:09-cv-325, 2010 WL 2640077, at * 4-5 (S.D. Ohio May 7, 2010). "A claimant must produce evidence beyond his present IQ scores to show that he exhibited deficits during his developmental period." *Turner v. Commissioner*, 381 F. App'x 488, 492 (6th Cir. 2010).

Plaintiff's strategy of attempting to fill the gaping hole in the evidence with his own testimony proved unsuccessful. Plaintiff stated that he spent approximately two years in prison on his 1995 conviction for assault with intent to do great bodily harm and obtained his GED in 1997 while he was incarcerated on a retail fraud conviction. (A.R. 34-35). Plaintiff did not submit any school, jail[5] or prison records in support of his claim for SSI benefits. He testified that he attended school through the ninth grade (A.R. 33), but never explained why he left school. He stated that he attended special education classes (A.R. 35), but it is well established that placement in a special

---

[5]Plaintiff stated that he had been sent to jail "at least 13 to 14 times" for his failure to pay child support. (A.R. 222). He acknowledged that he was the father of two children with his girlfriend Sue Holtz, but disputed paternity of "4 other children" by another girlfriend. (A.R. 222). Plaintiff is not eligible to receive social security benefits for any months he was confined in a jail, prison, or correctional facility. 42 U.S.C. § 402(x)(1)(A).

classroom falls short of establishing significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested before age 22. *See Foster v. Halter*, 279 F.3d at 352; *McLeichy v. Commissioner*, No. 1:09-cv-857, 2010 WL 3852318, at * 2 (W.D. Mich. Sept. 29, 2010). If plaintiff had submitted his school records, and further assuming that they had supported his claim of poor academic performance, he would still fall short of carrying his burden at step 3 of the sequential analysis. There are numerous possible explanations for a lack of academic success. The Sixth Circuit "has never held that poor academic performance, in and of itself, is sufficient to warrant a finding of onset of subaverage intellectual functioning before age twenty-two." *Hayes v. Commissioner*, 357 F. App'x at 677.

On March 26, 2004, in connection with plaintiff's earlier unsuccessful application for application for SSI benefits, an ALJ found that plaintiff's major mental disorder was substance abuse and was not convinced that plaintiff had any severe mental impairment independent of that condition. (A.R. 70). On October 24, 2005, Psychologist Mulder conducted a consultative examination for Michigan's Disability Determination Service. Mulder noted plaintiff's history of alcohol abuse and continued cannabis use, but found no evidence of mental retardation. (A.R. 221-27). On July 20, 2006, plaintiff gave a history to Psychiatrist Virgilio Vasquez, which included past marijuana and cocaine use. Dr. Vasquez did not diagnose plaintiff as having mental retardation. (A.R. 246). On March 27, 2007, Joe Deloach, Ph.D., reviewed plaintiff's records and found no evidence of mental retardation. (A.R. 268-85). On May 9, 2007, Dr. Vasquez noted that plaintiff was doing "very well" and that plaintiff had recently traveled to North Carolina to see his brother. (A.R. 354).

Plaintiff places extraordinary emphasis on the February 5, 2009 consultative evaluation conducted by Psychologist Mulder (A.R. 335-40) and the related psychiatric review technique and mental residual functional capacity assessment forms he completed (A.R. 332-34, 341-49). Mulder described his assignment as a referral "for a psychological evaluation in regards to [plaintiff's] application for Social Security Disability, and to ascertain his potential for full-time, gainful employment." (A.R. 335) Mulder administered the Wechsler Adult Intelligence Scale - Fourth Edition test, and plaintiff achieved low test scores: 66 in verbal comprehension, 63 in working memory index, 67 in perceptual reasoning, and 59 in processing speed. Mulder reported that plaintiff's full scale IQ was 58, which fell within the mildly mentally retarded classification. (A.R. 339-40). Mulder not only offered his opinion that plaintiff's test scores were a good indication of plaintiff's February 2009 level of intellectual functioning, he expressed an opinion that plaintiff's scores were "also consistent with the history that he gave indicating that he completed the ninth grade in special education getting mostly failing grades." (A.R. 339). Plaintiff had no history of hospitalizations for treatment of mental impairments and no long-term treatment for anything other than substance abuse (A.R. 336), yet Mulder provided his opinion that plaintiff met the requirements of listings 12.04 and 12.05. (A.R. 344-45).

The ALJ gave little weight to Psychologist Mulder's opinions. The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. § 416.927(e)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004); *see also Turner v. Commissioner*, 381 F. App'x at 492-93. A consulting psychologist's opinion that an individual is disabled is not entitled to any special significance. *See* 20 C.F.R. § 416.927(e)(1); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007). Likewise, "no special

significance" is attached to a psychologist's opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment, because these are administrative issues reserved to the Commissioner. 20 C.F.R. § 416.927(e)(2); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009). The ALJ found that the results of the February 2009 evaluation were inconsistent with the record as a whole, including Mulder's own 2005 evaluation. (A.R. 18). The ALJ determined that plaintiff's 2009 test scores were not a valid indicator of plaintiff's level of intellectual functioning sixteen years earlier and he was not bound by Mulder's contrary conclusion. *See Brown v. Astrue*, No. CV-09-2017, 2010 WL 4811782, at * 2 (D. Ariz. Nov. 19, 2010); *Remsing v. Commissioner*, No. 09-cv-12258, 2010 WL 1141613, at * 7 (E.D. Mich. Feb. 7, 2010). There is more than substantial evidence supporting the ALJ's finding that the results of a test administered fifteen years and eleven months after plaintiff had reached age twenty-two did not establish "significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period."[6] *See Foster*, 279 F.3d at 354-55; *Jones v. Commissioner*, No. 1:08-cv-562, 2009 WL 3498809, at * 4 (W.D. Mich. Oct. 26, 2009) ("[T]he great length of time separating the developmental period from the administration of the IQ test, tends to seriously undermine its probative value regarding [plaintiff's] condition over a decade earlier.")(Maloney, C.J.).

---

[6]The ALJ's opinion does not include a discussion of the paragraph C requirements of listing 12.05. (A.R. 13-15). Any deficiency in this regard is harmless because plaintiff was required to satisfy the diagnostic description *and* paragraph C. *See Foster*, 279 F.3d at 354.

B.     Other Arguments Found in Section I of Plaintiff's Brief

Section I of plaintiff's brief concludes with the following paragraph:

> Even more disturbing in the ALJ's decision is that he fails to find the claimant[']s low IQ [] a severe impairment.  To say that this claimant's learning disability does not significantly limit his ability to perform basic work activities is somewhat absurd[, g]iven a valid IQ score of 58  and with a work history of no SGA at age of 39.  The ALJ's decision tends to focus more on the claimant's representative[']s timing and the submission of evidence as opposed to focusing on the claimant's medical file.  (Tr. 7-20).  There are no less than six references as to the timing of the psychological evaluation and IQ testing performed by Dr. Mulder, whose exhibits are 14-F through 16-F.  The ALJ continues to bring up the timing of the submission of this evidence, yet does not indicate the relevance or significance of the timing.  When reading the opinion as a whole, it would seem the ALJ is trying to send a message to the representative as opposed to properly adjudicating the claim.

(Plf. Brief at 5).  Plaintiff's arguments are not supported by legal authority.  Issues raised in a perfunctory manner are deemed waived.  *See Geboy v. Brigano*, 489  F.3d 752, 767 (6th Cir. 2007); *see also Anthony v. Astrue*, 266 F. App'x 451, 458 (6th Cir. 2008).  Even assuming that the above-quoted arguments had not been waived, they are meritless, for the reasons set forth below.

1.     Step 2 of the Sequential Analysis

Plaintiff argues that the ALJ should have found that he had additional severe impairments.  The finding of serious impairments at step 2 is a threshold determination.  The finding of a single serious impairment is enough and requires continuation of the sequential analysis.  *See Maziarz v. Secretary of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).  The ALJ found that plaintiff had the severe impairments of "diabetes mellitus, residuals of a healed fracture of the right hand, depression, and post-traumatic stress disorder (PTSD)."  (A.R. 12).  His failure to find additional severe impairments at step 2 is "legally irrelevant." *McGlothin v. Commissioner*, 299 F. App'x 516, 522 (6th Cir. 2009); *see Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008).  The

ALJ continued the sequential analysis and considered plaintiff's severe and non-severe impairments, including his mental condition, in making his factual finding regarding plaintiff's RFC. (A.R. 11-12).

### 2. Context of the Consultative Evaluation

It was appropriate for the ALJ to consider the context of Psychologist Mulder's consultative evaluation. *See* 20 C.F.R. § 416.927. Plaintiff had been unsuccessful in all his earlier applications for SSI benefits. (A.R. 10, 67-74, 114-15). A week before his administrative hearing on this claim, he received a consultative evaluation conducted by Psychologist Mulder. The evaluation did not occur in the context of a referral from a treating physician or psychiatrist for purposes of treatment, but was on a referral from plaintiff's attorney for the purpose of generating evidence supporting plaintiff's application for SSI benefits. It yielded, among other things, Mulder's opinion that plaintiff had the previously undiagnosed listing-level impairment of mental retardation. The ALJ did not reject Mulder's opinions because they were obtained on a referral from plaintiff's attorney. He rejected Mulder's opinions because they were opinions on issues reserved to the Commissioner, lacked adequate support, and were inconsistent with the record as a whole. I find no error.

## II.

The arguments in section II of plaintiff's brief are fragmentary, undeveloped, and unsupported by legal authority. They are more readily quoted than summarized:

II.     The Commissioner erred as a matter of law in failing to properly evaluate the evidence in determining the claimant's mental retardation was [not] medically

> equivalent to listing 12.05 given a valid IQ score of 58, and significant evidence of other serious impairments.

> The POMS recognizes that IQ scores in the range of 70-75 in the presence of other physical or mental disorders that impose significant and additional work-related limitation of function may support an equivalence determination. (POMS DI 24515.056(D)(1)).

> The record would support the claimant having a low IQ. Testing of the claimant indicates a full scale IQ of 58, yet the ALJ disregarded this score and testing. If one is to even assume that this testing was slightly low, it [sic] is hard pressed to determine that the IQ testing would be above 70. This in combination of [sic] claimant[']s polyneuropathy and chronic pain, which again the ALJ failed to consider, would arguably meet listing 12.05 or be the medical equivalent to said listing. The ALJ further failed to consider pain medication of methadone and neurontin for claimant's chronic pain and the side effects of these medications.

> There is significant evidence in this file that the ALJ failed to consider.

(Plf. Brief at 5). Plaintiff's perfunctory arguments should be deemed waived. *See Geboy v. Brigano*, 489 F.3d at 767. Assuming that the issues had not been waived, they do not provide grounds for disturbing the Commissioner's decision, for the reasons set forth below.

### A.     Failure to Discuss Evidence

Plaintiff argues that there is "significant evidence in this file that the ALJ failed to consider." (Plf. Brief at 5). Plaintiff's vague allusion to other evidence is not helpful. Further, "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Daniels v. Commissioner*, 152 F. App'x 485, 489 (6th Cir. 2005); *see Bosley v. Commissioner*, 397 F. App'x 195 (6th Cir. 2010).

### B.     Program Operations Manual System (POMS)

The Social Security Administration's Program Operations Manual System (POMS) is an internal agency manual. Its guidelines have no legal force, and failure to follow the POMS is

not legal error. *See Davis v. Secretary of Health & Human Servs.*, 867 F.2d 336, 340 (6th Cir. 1989) ("POMS is a policy and procedure manual that employees of the Department of Health & Human Services use in evaluating Social Security claims and does not have the force and effect of law . . . ."); *see also Wells v. Astrue*, No. 09-32, 2009 WL 3400911, at * 4 (E.D. Ky. Oct. 20, 2009)("The POMS contains a disclaimer indicating that it 'states only internal SSA guidance' and 'is not intended to, and does not, and may not be relied upon to create any rights enforceable by law by any party in a civil or criminal action.'") (quoting SSA's Program Operations Manual System, disclaimer, https://secure.ssa.gov/apps10/poms.nsf/aboutpoms). POMS guidelines, where applicable, provide persuasive authority. *Davis*, 867 F.2d at 340.

The POMS guideline invoked by plaintiff (POMS DI 24515.056(D)(1)) does not apply, because plaintiff did not provide evidence establishing that he experienced subaverage general intellectual functioning before the age of twenty-two. *See Crane v. Astrue*, 369 F. App'x 915, 921 (10th Cir. 2010) (The "evaluation tool" of POMS 24515.056(D)(1)(c) "is only used when the capsule definition of that impairment [(listing 12.05)] is satisfied."); *see Brown v. Astrue*, No. CV 09-217, 2010 WL 4811782, at * 2-3 (D. Ariz. Nov. 19, 2010)(same).

Assuming that POMS DI 24515.056(D)(1) did apply, it would lend additional support the ALJ's decision denying plaintiff's application for SSI benefits. The guideline states as follows:

Listing 12.05C is based on a combination of an IQ score with an additional and significant mental or physical impairment. The criteria for this paragraph are such that a medical equivalence determination would very rarely be required. However, slightly higher IQ's (e.g., 70-75) in the presence of other physical or mental disorders that impose additional and significant work-related limitation of function may support an equivalence determination. It should be noted that generally the higher the IQ, the less likely medical equivalence in combination with another physical or mental impairment(s) can be found.

POMS DI 24515.056(D)(1)(c), available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0424515056

(last visited February 25, 2011).  Although a medical equivalence determination is "very rarely"

required" in this context, *see Riley v. Apfel*, No. 97-1799, 1998 WL 553151, at * 5 (6th Cir. Aug. 20,

1998), the ALJ made one, and he found that plaintiff did not equal the requirements of any listed

impairment, including listing 12.05(C). (A.R. 13-15).  There was no evidence that plaintiff

experienced cognitive deficits before February 2009, no examining or treating physician had

recommended inpatient treatment for his mental impairments, and he had only "mild" limitation in

his daily activities.  The ALJ's factual finding that plaintiff did not equal the requirements of any

listed impairment is supported by more than substantial evidence.


C.      Side Effects of Medication

Plaintiff's argument that the ALJ failed to consider the purported side effects of

Neurontin and methadone cannot withstand scrutiny.  The ALJ expressly considered plaintiff's use

of these medications and noted that plaintiff did not claim that he suffered from any adverse side-

effects.  (A.R. 16).  I find no error.


D.      Credibility

Plaintiff's argument that the ALJ failed to consider his "polyneuropathy and chronic

pain" is meritless.  The ALJ found that plaintiff's testimony regarding the intensity, persistence, and

limiting effects of his symptoms was not fully credible.  (A.R. 15-18).  The ALJ's factual finding

with regard to plaintiff's credibility is supported by more than substantial evidence.

Credibility determinations concerning a claimant's subjective complaints are peculiar-

ly within the province of the ALJ.  *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589,

592 (6th Cir. 1987); *see also Payne v. Commissioner*, No. 08-4706, 2010 WL 4810212, at * 3 (6th Cir. Nov. 18, 2010). It is the ALJ's function to determine credibility issues. *See Siterlet v. Secretary of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528; *see McGlothlin v. Commissioner*, 299 F. App'x 516, 523-24 (6th Cir. 2008). The court cannot substitute its own credibility determination for the ALJ's. The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the deferential "substantial evidence" standard. "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge h[is] subjective complaints." *Buxton v. Halter*, 246 F.3d at 773. "Since the ALJ has the opportunity to observe the demeanor of the witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Casey v. Secretary of Health & Human Servs.*, 987 F.2d at 1234; *see White v. Commissioner*, 572 F.3d at 287.

Plaintiff's daily activities undercut his claims of disabling functional limitations. *See Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir. 2007); *Blacha v. Secretary of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). His credibility was further undermined by the absence

of significant atrophy or neurological deficits. *See Crouch v. Secretary of Health & Human Servs.*, 909 F.2d 852, 856-57 (6th Cir. 1990) (the absence of atrophy and significant neurological deficits supports the Commissioner's conclusion that the claimant's allegation of severe and disabling pain was not credible); *see also Gaskin v. Commissioner*, 280 F. App'x 472, 477 (6th Cir. 2008).

Plaintiff's hearing testimony provides overwhelming evidence supporting the ALJ's finding regarding plaintiff's credibility:

Q  Okay. All right. How's your, your drug use going? I'm asking about illegal drugs at this point.

A  I don't --

Q  Are you still using drugs?

A  No, I don't do drugs at all.

Q  Did you ever?

A  No.

Q  Never?

A  No.

*  *  *

Q  I'm not asking if its in you. I'm asking if you've ever smoked Marijuana?

A  No.

Q  Did you ever use Crack Cocaine?

A  No, I did not.

Q  You ever use Cocaine of any kind --

A  No --

Q       -- Crack or otherwise?

A       -- no, I won't.

Q       Do you have any explanation for why you've repeatedly come up positive for Cocaine and Marijuana?

A       That's just something that they must be putting in their own words because I haven't never told them nothing [sic] about me doing anything like that . . . .

Q       Okay.  Now you've applied for Social Security disability before.  Do you remember going to a hearing before the Judge --

A       Yes --

Q        -- back in --

A       -- yeah --

Q       -- 2003, 2004?  Okay.  I'm reading his file, November 3, 2003, in Grand Rapids.

A       Yes.

Q.      He says that you admitted to him that you use Crack Cocaine, Crack Cocaine, and Marijuana weekly.

A.      No, I know I did not say that to [him] period.

(A.R. 50-53).  Plaintiff blamed an ex-girlfriend for somehow sneaking the numerous references to his drug and alcohol abuse into the ALJ's March 26, 2004 decision denying his earlier application for SSI benefits.  (A.R. 53, 67-74).  Plaintiff then offered testimony that he "may have" used alcohol a long time ago:

Q        . . . And you're testifying that you've never used Marijuana[?]

A       Maybe just the alcohol, I mean but that that's [sic] been done a long time ago though.

Q       Yeah, you said you used alcohol once or twice.

A       Once or twice and it ain't been no more [sic] since so. I don't know where all that other stuff is coming up from because I was never doing none of that.

Q       It's coming from your records, sir, from you're urine.

(A.R. 53-54). Plaintiff's attorney then questioned his client. Plaintiff repeated that he never used any kind of drugs (A.R. 54), but later changed his testimony to indicate that he "may have" used marijuana in the past. (A.R. 56). The ALJ's finding that plaintiff's testimony was not fully credible is supported by overwhelming evidence.


## Recommended Disposition

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.


Dated:   February 28, 2011          /s/  Joseph G. Scoville                    
                                    United States Magistrate Judge


## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).